# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| DELORES LEWIS, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> COUNTY OF COOK, d/b/a ) <br> COOK COUNTY HIGHWAY ) <br> DEPARTMENT, and TODD H. STROGER, ) <br> RUPERT GRAHAM, HERBERT ) <br> SCHUMANN, CECIL MARCHAND, MARK ) <br> KILGALLON, and JONATHAN ) <br> ROTHSTEIN, individually and in their official ) <br> capacities ) <br> ) <br> Defendants. ) | No. 10 C 1313 <br><br> Magistrate Judge Schenkier |

## MEMORANDUM OPINION AND ORDER[1]

On March 3, 2010, plaintiff, Delores Lewis, filed a five-count amended complaint[2] against the defendants (doc. # 5), alleging violations of the *Shakman* Consent Decree (Count I) and Ms. Lewis's civil rights under 42 U.S.C. § 1983 (Count II); sex discrimination (Count III) and retaliation (Count IV) in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.*, and the Civil Rights Act of 1991, 42 U.S.C. § 1988; and violations of the Equal Pay Act of 1963, 29 U.S.C. § 626(b) (Count V). On May 14, 2010, defendants – County of Cook, doing business as Cook County Highway Department, and Todd H. Stroger, Rupert Graham, Herbert Schumann, Cecil Marchand, Mark Kilgallon, and Jonathan Rothstein, both in their official capacities

---

[1] Pursuant to the consent of the parties and 28 U.S.C. § 636(c), on November 24, 2010, this case was assigned to this Court for all proceedings, including the entry of final judgment (doc. # 42).

[2] On February 25, 2010, Ms. Lewis filed a complaint (doc. # 1) that did not charge any individually named defendants in their official capacities, but was otherwise identical to her amended complaint.

and individually – moved to dismiss Counts I, II, and IV of plaintiff's complaint (doc. # 30). For the reasons set forth below, we deny the defendants' motion to dismiss Count I, Count II (as applied to the individually named defendants), and Count IV. However, we grant the County's motion to dismiss Ms. Lewis's claim against Cook County in Count II.

## I.

We begin by providing a summary of the relevant background information.[3] Cook County is an Illinois governmental entity, whose president at the time the suit was filed was Todd H. Stroger (Am. Compl. ¶¶ 6-7). Rupert Graham is the Cook County Highway Superintendant (*Id.* ¶ 8). Herbert Schumann was formerly Director of Financial Control for the Highway Department, a position now occupied by Cecil Marchand (*Id.* ¶¶ 9-10). Mark Kilgallon is Chief of the Bureau of Administration, and Jonathan Rothstein is the former Acting Bureau Chief of Human Resources (*Id.* ¶ 11-12).

From January 6, 1992 until April 2000, Ms. Lewis worked as a tax examiner in the Office of the Cook County Clerk (Am. Comp. ¶ 14). In April 2000, the Cook County Highway Department ("Department") hired Ms. Lewis, where she worked as a Right of Way Agent II. In February 2004, Ms. Lewis assumed the duties of an Administrative Assistant IV ("AAIV") (*Id.* ¶16). However, she did not receive a change of title or pay increase commensurate with her new job duties (*Id.*). In 2006, Mr. Schumann replaced William Krystiniak as head of the Department (*Id.* ¶ 17). When Mr. Krystiniak left, his duties were divided among the remaining employees (*Id.* ¶ 18). As a result,

---

[3] For purposes of the County's motion to dismiss, the Court assumes as true all well-pleaded allegations set forth in plaintiff's complaint. *See, e.g., Killingsworth v. HS Bank Nevada, N.A.*, 507 F.3d 614, 618 (7th Cir. 2007). However, the Court does not accord such deference to the allegations when analyzing the County's subject matter jurisdiction challenge. *See Apex Digital, Inc. v. Sears, Roebuck & Co.*, 572 F.3d 440, 444 (7th Cir. 2009).

Ms. Lewis assumed the additional duties of acting as liaison to the Cook County State's Attorney's Office ("SAO"), answering interrogatories, and representing management on employment-related issues (*Id.*). Despite her high ratings on performance evaluations, Ms. Lewis's attempts to obtain promotions and position upgrades in the Department were unsuccessful (*Id.* ¶¶ 19-20).

On February 2, 2007, as part of the long-standing proceedings in *Michael Shakman, et al. v. Democratic Organization of Cook County, et al.*, 69 C 2145, this Court entered a Supplemental Relief Order ("SRO"). *See* Supplemental Relief Order for Cook County in *Shakman v. Democratic Org. of Cook County*, 69 C 2145 (doc. # 587). The SRO provided a claims procedure that Class Members (defined to include employees of Cook County) could utilize to seek a monetary award for alleged violations of the *Shakman* Consent Decrees prior to the entry of the SRO (SRO, Section IV). Under the SRO, a court-appointed Compliance Administrator was vested with the sole discretion and authority to determine whether a person filing a pre-SRO claim should receive a monetary award, and if so, in what amount (*Id.*, Section IV(D)(1)).

Ms. Lewis consequently filed a complaint with the Compliance Administrator, who strongly encouraged the County to perform a desk audit of Ms. Lewis (Am. Compl. ¶ 21). In August 2008, after her complaint, Ms. Lewis's position was upgraded from Grade 16 to 18, and she obtained the AAIV title (*Id.* ¶ 22). The following month, the Compliance Administrator awarded Ms. Lewis $86,000.00 after concluding that the Department had politically discriminated against Ms. Lewis by denying her requested promotions and reclassifications (*Id.* ¶ 23).

After she filed her complaint with the Compliance Administrator, Ms. Lewis was treated differently from other employees with respect to her furlough days, and Cook County failed to respond to Ms. Lewis's grievances regarding the incident; Mr. Graham, Mr. Schumann, and

Mr. Kilgallon, who had previously granted another employee's request for excess furlough days, all disregarded Ms. Lewis's requests for payment (Am. Compl. ¶ 25). In addition, after receiving the title of AAIV in 2008, Ms. Lewis was forced to become a union employee and, as a result, was stripped of her personnel-related job duties (*Id.* ¶ 27). Meanwhile, another AAIV named Bobbie Jackson, who Ms. Lewis believes to be a member of the Eighth Ward political organization and who reportedly donated $1,500.00 to County politicians, was not required to join a union (*Id.*). While the County could have requested that Ms. Lewis be exempt from the union, the County made no such request on her behalf (*Id.*). Instead, Tony Cole, a political hire, was brought in to take over Ms. Lewis's personnel duties (*Id.*).

Since becoming a union member, Ms. Lewis has been given virtually no assignments (Am. Compl. ¶ 28). In July 2009, she was involuntarily transferred to a different office to prepare travel vouchers, but was never given computer access to complete those vouchers (*Id.* ¶ 29). In October 2009, Mr. Marchand replaced Mr. Schumann and immediately held a staff meeting to allocate assignments (*Id.* ¶ 30). Ms. Lewis was never told of the meeting or given any assignments (*Id.*). Ms. Lewis later spoke with Mr. Marchand and asked why she was not included in the meeting (*Id.* ¶ 31). Mr. Marchand responded that he "knew all about her" (*Id.*). Mr. Marchand then informed Ms. Lewis that her supervisor was Muhammad Quarishi, who would be giving her an assignment (*Id.* ¶ 32). Later, after Mr. Marchand admitted that he was in fact Ms. Lewis's supervisor, Mr. Marchand told Ms. Lewis that she would be working on travel vouchers with another employee (*Id.* ¶ 33). However, Ms. Lewis has yet to receive any assignments, even though she attends work daily and requests assignments several times per week (*Id.* ¶ 34).

On October 14, 2008, Ms. Lewis filed a Report of Retaliation with the Independent Inspector General ("IGO") (Am. Compl. ¶ 24).[4] The IGO forwarded the complaint to the Office of the Cook County Post-SRO Complaint Administrator ("CA") on February 12, 2009 (*Id.*). On December 21, 2009, after investigating Ms. Lewis's October 2008 retaliation complaint, the CA issued a Final Claim Report finding that Ms. Lewis had been "subjected to significant, continuing political discrimination and retaliation" (*Id.* ¶ 35).

## II.

Count I of Ms. Lewis's complaint alleges that Cook County violated the *Shakman* Decree. The *Shakman* Decree enjoins the County from (with certain exceptions) "conditioning, basing or knowingly prejudicing or affecting any term or aspect of governmental employment, with respect to one who is at the time already a government employee, upon or because of any political reason or factor." *Shakman v. Democratic Org. of Cook County*, 481 F.Supp. 1315, 1358 (N.D. Ill. 1979), *vacated sub nom.*, *Shakman v. Dunne*, 829 F.2d 1387, 1398 (7th Cir. 1987), *cert. denied*, 484 U.S. 1065 (1988). Count II alleges that defendants violated Ms. Lewis's civil rights under Section 1983 by retaliating against her for reporting political discrimination. Count IV alleges that Cook County retaliated against Ms. Lewis for complaining of sexual discrimination in violation of Title VII. We provide the governing legal standards before addressing the County's Rule 12(b)(1) challenges to Counts I and II and Rule 12(b)(6) challenges to Counts II and IV.

---

[4] Under the SRO, the post-SRO Complaint procedure is to be administered by the Inspector General's Office ("IGO") or by any other individual or entity designated by the Court pursuant to Section V of the SRO – which, pursuant to an order entered February 12, 2009, is now the post-SRO Complaint Administrator ("CA") (*See* 69 C 2135: Agreed Order Appointing Post SRO Complaint Administrator For Cook County (doc. # 1025)).

## A.

Rule 12(b)(1) requires dismissal of any claim over which the federal court lacks subject matter jurisdiction. In reviewing a motion challenging subject matter jurisdiction, "the district court may properly look beyond the jurisdictional allegations of the complaint and view whatever evidence has been submitted on the issue to determine whether in fact subject matter jurisdiction exists." *Apex Digital, Inc. v. Sears, Roebuck & Co.*, 572 F.3d 440, 444 (7th Cir. 2009) (internal quotations omitted). Once such evidence is offered, "[t]he presumption of correctness that we accord to a complaint's allegations falls away," and the plaintiff bears the burden of coming forward with competent proof that jurisdiction exists. *Id.*

Rule 12(b)(6) requires dismissal if the allegations in the complaint, when taken as true and with all reasonable inferences drawn in favor of the plaintiff, do not state a claim for which legal relief can be granted. A court considering a Rule 12(b)(6) motion to dismiss is generally confined to the allegations contained in the complaint, and cannot consider extrinsic evidence without converting the motion to a Rule 56 motion for summary judgment; however, "the ban on considering matters outside the pleadings is not absolute." *Cont'l Cas. Co. v. American Nat. Ins. Co.*, 417 F.3d 727, 731 n.3 (7th Cir. 2005). Documents that a defendant attaches to a motion to dismiss will be considered part of the pleadings if they are: (1) referred to in the plaintiff's complaint and (2) central to the plaintiff's claims. *Id.* Further, in ruling on a Rule 12(b)(6) motion, the district court may consider matters of public record beyond the complaint. *Henson v. CSC Credit Servs.*, 29 F.3d 280, 284 (7th Cir. 1994).

While the material facts alleged in plaintiff's complaint must be taken as true and construed favorably to the plaintiff, this tenet is "inapplicable to legal conclusions" that are "supported by mere

conclusory statements." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009). In assessing whether the allegations are sufficient to state a claim, a reviewing court must determine whether the plaintiff's assertions contain "'enough facts to state a claim to relief that is plausible on its face.'" *Id.* (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In *Iqbal*, the Supreme Court explained that the "plausibility standard is not akin to a 'probability requirement,' but asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* The Seventh Circuit recently interpreted this requirement as follows:

> The fact that the allegations undergirding a claim could be true is no longer enough to save a complaint from being dismissed; the complaint must establish a nonnegligible probability that the claim is valid; but the probability need not be as great as such terms as 'preponderance of the evidence' connote

*In re: Text Messaging Antitrust Litig.*, ___ F.3d ___, ___, 2010 WL 5367383, *6 (7th Cir. Dec. 29, 2010).

### B.

The County first argues that Ms. Lewis's *Shakman* claim should be dismissed under Rule 12(b)(1) as time-barred by the SRO.[5] In assessing this argument, we begin by explaining the relevant provisions of the SRO.

### 1.

The SRO authorizes aggrieved class members (defined to include employees of the County) to "file for post-SRO claim relief under the post-SRO claim procedure," or to "seek relief otherwise provided by law" (SRO, Section III(F)(1)). By agreeing to the SRO, the County waived its right to

---

[5] The County's jurisdictional challenge applies to Counts I and II, as well as Counts III, IV, and V (to the extent that any of Ms. Lewis's allegations in Counts III, IV, and V are based on a violation of the *Shakman* Decree) (Defs.' Mot. at 3).

challenge the *Shakman* Consent Decree (entered January 1, 1994), the SRO, and the standing of class members to "enforce" or "seek relief" under the 1994 Consent Decree or the SRO (*Id.*, Section III(F)(2)). Thus, any class member may file suit to enforce the provisions of the *Shakman* consent decrees and the SRO, unless otherwise barred by the specific provisions of the SRO or any other applicable limitations period. The SRO provides that, within 120 days after the date on which a complainant "learned or should have learned" of an alleged violation of the *Shakman* consent decrees or the SRO, the complainant may file a lawsuit or, in lieu of immediately going to court, may utilize the claim and settlement procedures established in the SRO (SRO, Section V). If the complainant utilizes the SRO procedures, the 120-day limitations period is "tolled from the date a complaint is filed with the [CA] until the date the [CA] issues its [Final Claim] [R]eport" (*Id.*, Section V(A)(6)).

Once the investigation is completed, and the CA issues the Final Claim Report, the complainant's right "to pursue his or her claims under the SRO" is reinstated, and the 120-day limitations period begins to run again (*Id.*). At that point, the complainant has whatever time is left from the 120-day limitations period to pursue his or her claim in court.[6]

On the other hand, if the complainant wishes to continue utilizing the SRO's procedures to try to resolve the complaint, she may do so by filing a Complaint Form with the SAO within 45 days after the CA issues its Final Claim Report (SRO, Section V(A)(9)). A complainant who continues to employ the SRO procedures by filing a post-report complaint has the right to a settlement conference (*Id.*, Section V(11)), and if that is unsuccessful, to proceed to arbitration (*Id.*, Section V(A)(12), V(B)). The SRO specifically states that, by filing an Arbitration Request Form, a

---

[6] For example, if a complainant filed a claim under the SRO 60 days after the complainant learned or should have learned of the alleged violation, the running of the 120-day period would be tolled until issue of the CA's Final Claim Report, at which point the complainant would have 60 days left in which to file suit in court.

8

complainant waives "any and all rights she or he may otherwise have arising from the alleged violations of the Consent Decrees or the SRO" (*Id.*, Section V(B)(8)).

The SRO states that if a complainant files a claim using the SRO procedures, the CA will investigate the claim "expeditiously" (SRO, Section V(A)(6)). Generally, the investigation shall be completed within 180 days (*Id.*). However, the SRO contemplates that there will be times when an investigation cannot be timely completed within 180 days. In such instances, the SRO sets forth a procedure for the CA to follow when a delay occurs. Because this procedure is central to the parties' dispute here, we quote the relevant part in full:

> If the [CA] is not able to complete its investigation within the time alloted, the [CA] shall notify the SAO, the Complainant (if the Complainant has alleged that she or he has been harmed by the unlawful political discrimination), [], and Plaintiff's Counsel of the reasons for the failure to complete the investigation within the allotted time. The [CA's] notice of failure to complete the investigation within one hundred eighty (180) days will be accompanied by a Notice of Rights. The Notice of Rights will inform the Complainants that if he or she wishes to seek relief for the alleged unlawful political discrimination in connection with any aspect of government employment with the County, the Complainant must either wait for the [CA] to complete its investigation to pursue a claim under the Consent Decrees or the SRO or may pursue his or her claim under applicable law by filing suit within forty-five (45) days. The limitations period applicable to any individual's claims against the County or any other person will be tolled from the date a complaint is filed with the [CA] until the date the [CA] issues the report.

*Id.*

**2.**

With this backdrop in mind, we turn to the treatment of Ms. Lewis's claim. On August 11, 2009, the CA sent a letter informing Ms. Lewis that the investigation of her October 14, 2008

complaint would not be completed on schedule (Pl.'s Resp. at 6).[7] Attached to the letter was a Notice of Rights stating that Ms. Lewis must either "1. [w]ait for the post-SRO CA to complete his investigation to pursue a claim under the *Shakman* Consent Decrees, *or* 2. Pursue [her] claim under applicable law by filing suit within forty-five (45) days of receipt of this Notice" (*See* Defs.' Mot., Ex. B at 3) (emphasis in original). Ms. Lewis did not file suit within 45 days of receiving the Notice of Rights and instead waited for the CA to complete his investigation. On December 21, 2009, the CA issued a Final Claim Report (Compl. ¶ 35). Then, on December 29, 2009, Ms. Lewis filed a Post-SRO Complaint Form with the SAO. After the SAO held an unsuccessful settlement conference with Ms. Lewis on January 27, 2010, Ms. Lewis was provided with an Arbitration Request Form. Rather than filing a request for arbitration, Ms. Lewis filed the instant action in federal court on February 25, 2010.

The County contends that Ms. Lewis forfeited her right to sue by waiting for the CA to complete his delayed investigation, rather than filing suit within 45 days after receiving the Notice of Rights. The County also argues that Ms. Lewis's resort to the settlement procedures under the SRO bar her from filing the *Shakman* claim in federal court (Defs.' Mem. at 4).

Because the County's argument raises an important issue of first impression regarding the interpretation of the SRO, on January 21, 2011, this Court invited counsel for the *Shakman* Class Plaintiffs and the CA to file memoranda expressing their views on the following four issues raised by the County's motion:

---

[7] According to the CA's letter, the investigation of Ms. Lewis's claim was delayed by both the CA's own administrative obstacles and the expansion of his investigation into her claim (See Defs.' Mot., Ex. B at 2).

10

(1) Whether, under Section V(A)(6), a complainant who received a Notice of Rights relinquishes the right to file suit in federal court based on the alleged violations of the *Shakman* consent decrees or the SRO by declining to file a federal lawsuit within 45 days of receiving the Notice of Rights, and instead allowing the CA to complete his investigation and issue an investigative report?

(2) Assuming that a complainant who has not filed suit in federal court within 45 days of receiving the Notice of Rights does not relinquish the right to file a federal lawsuit based on alleged violation of the *Shakman* consent decrees or the SRO, what is the applicable limitations period within which the complainant must file a federal suit after the CA issues an investigative report?

(3) Does a complainant who files a Complaint Form pursuant to Section V(A)(9) of the SRO within 45 days of the CA's investigative report, which triggers the settlement process under the SRO, thereby relinquish the right to file a federal lawsuit based on alleged violations of the *Shakman* consent decrees and the SRO?

(4) Assuming that a complainant who has filed a Complaint Form pursuant to Section V(A)(9) has not relinquished the right to file a federal lawsuit based on the alleged violations of the *Shakman* consent decrees and the SRO, does that complainant then relinquish the right by participating in settlement conference with the State's Attorney's Office pursuant to Section V(A)(11) of the SRO?

(10 C 1313: doc. # 47 at 3). Ms. Lewis and the County were given an opportunity to reply to any memoranda filed (*Id.*). The CA and Class Plaintiffs responded to the Court's query (doc. ## 53-54). The County – but not Ms. Lewis – filed a reply (doc. # 56).

**3.**

We have carefully considered the submissions of the parties, the CA and Class Plaintiffs. We have done so in light of the language, structure and purpose of the SRO. We conclude that under Section V(A)(6) of the SRO, the running of the 120-day limitations period is not triggered by the Notice of Rights. Nor does the issuance of the Notice of Rights trigger the onset of a new 45-day limitations period in which a suit must either be filed or is forever waived. Rather, a complainant who receives a Notice of Rights may file a *Shakman* suit within 45 days. If the complainant fails to do so, that does not waive the right to later do so; the complainant instead must then wait for the CA

11

to complete the investigation and issue an investigative report. We further conclude that a complainant does not waive the right to file a *Shakman* suit merely by invoking the settlement procedures available under the SRO. Finally, we conclude that once a final investigative report issues and the tolling of the 120-day limitations period ceases, a complainant's right to file a *Shakman* suit terminates on the first of the following two events to occur: (1) expiration of the 120-day limitations period, or (2) the filing of a complaint for arbitration. The County's contrary interpretation of the SRO is unpersuasive for several reasons.

*First*, the SRO specifies only two instances in which a complainant has waived the right to file suit in federal court based on a post-SRO claim: when more than 120 (un-tolled) days have passed since the alleged violation occurred (SRO, Section V), or when a complainant has submitted a request for arbitration (*Id.*, Section V(B)(8)). Otherwise, a complainant retains the right to file a *Shakman* claim in court. We are loathe to imply a waiver of rights beyond those two specifically enumerated circumstances.[8]

*Second*, and in a related vein, the SRO states that the 120-day period for filing suit is tolled "from the date a complaint is filed with the [CA] until the date the [CA] issues its report" (SRO, Section V(A)(6)). The SRO does not state that tolling of the 120-day limitations period ceases once a Notice of Rights issues.

*Third*, the defendants' reading of the SRO would create an anomalous result. Claimants whose investigations were completed within the 180-day time period would enjoy the option of

---

[8] We have considered the fact that in Ms. Lewis's case, the CA supplied a Notice of Rights form and a "Path of a Patronage Complaint" diagram that the County cites as support for its argument (*See* Defs' Mot at 7-8; Defs.' Ex. B). However, these documents were never approved by the Court, and are no longer in use (*see* Class Plaintiffs' Memorandum at 7). In any event, we focus instead on the language of the SRO – the only language that controls.

either continuing under the SRO process or filing suit with an investigative report in-hand. By contrast, under defendants' reading, claimants whose investigations were delayed through no fault of their own would be forced to either terminate their investigation by filing suit within 45 days, or instead allow the investigation to move forward, waive their right to go to court, and be limited to the SRO settlement and arbitration processes. The system defendants espouse would create an incentive for claimants to terminate delayed investigations precipitously, and thus would undermine a central purpose of the investigative process – to provide parties with an independent assessment of a complaint, to use to better inform their decisions regarding settlement, arbitration or suit.

*Fourth*, defendants' argument misconceives the purpose of the Notice of Rights. The event that triggers that notice is the CA's need for more than the presumptive 180-day period to complete an investigation. The purpose of that notice is to inform a complainant of the delay in completing the investigation and the reason for it – and to give the complainant the *option* of allowing the investigation to proceed or instead to go to court if the complainant does not wish to wait for a more extended period for the investigative result. In this respect, the SRO parallels the right of a Title VII plaintiff who files an EEOC change to allow the agency investigation to run its course (even if it is a time-consuming course), or instead to seek a right to sue letter that allows the plaintiff to bring suit without the EEOC investigation being completed. The purpose of the SRO was not to force complainants who receive a Notice of Rights to precipitously file federal lawsuits.

4.

Under our reading of the SRO, Ms. Lewis did not waive her right to assert her *Shakman* claim in this suit merely by choosing to let the investigation reach completion and by declining to sue within 45 days after receiving the Notice of Rights. Nor did she waive that right by invoking the

13